649 S.E.2d 108

**TOWN OF IVA, By and Through Its ZONING ADMINISTRATOR, Respondent,**

v.

**Annette HOLLEY and Anne Holley–Barnes, Appellants.**

**No. 4262.**

Court of Appeals of South Carolina.

Heard April 10, 2007.
Decided June 21, 2007.
Rehearing Denied Aug. 24, 2007.

C. Rauch Wise, of Greenwood, for Appellants.

Mary C. McCormac, of Clemson, for Respondent.

GOOLSBY, J.

Annette Holley and Anne Holley–Barnes (collectively the Holleys) appeal an order in which the master-in-equity found

the enforcement of a zoning ordinance against them did not violate the Equal Protection Clause. We affirm.

## FACTS

In 1986, the Town of Iva (the Town) adopted a zoning ordinance that included an "RS" classification intended to provide "homogeneous and aesthetically harmonious development of single-family dwellings on lots having an area of 10,000 square feet or more." One permitted use in the RS area was "[d]etached single-family dwellings, excluding mobile homes." After enactment of the ordinance, however, city officials did not regularly enforce the portion of the ordinance not allowing mobile homes in the RS zone even after appellant Annette Holley complained in 1999 during a town council meeting that mobile homes had been placed in areas that were not zoned for them.

On July 1, 2002, the Town's newly elected mayor and council members were sworn into office. Since then, the Town has prohibited mobile homes in RS areas that were not in place before the new administration took office. The decision to enforce the prohibition against mobile homes in RS areas was made without a public vote or public notice, and the Town apparently failed to notify Anderson County, the governmental entity responsible for issuing permits to move mobile homes.

On January 15, 2003, Holley's daughter, appellant Anne Holley–Barnes, obtained a permit from Anderson County to move her mobile home onto Holley's property at 400 Betsy Street. 400 Betsy Street is in an RS zone of the Town. In preparation for the move, Holley–Barnes paid a deposit to the Town for sewer and water connections. After the mobile home was moved onto the lot, both a Town police officer and a Town council member informed Holley–Barnes the mobile home was located on property not zoned for mobile homes and she would not be allowed to complete the installation. The Holleys refused to remove the mobile home from the property and continued with the remaining preparations. On January 20, 2003, the mayor and town council notified Holley–Barnes by letter to "cease and desist from continuing any further actions to install a mobile home on the property." Although

the Town sent the Holleys several more letters informing them of the zoning ordinance violation and their rights to appeal the zoning enforcement, the Holleys persisted in their refusal to remove the mobile home from 400 Betsy Street.

On October 9, 2003, the Town filed a complaint against the Holleys for violating the zoning ordinance. The Holleys answered, asserting the Town was selectively enforcing the zoning ordinance in violation of the Equal Protection Clause.[1] At trial, the town clerk and treasurer acknowledged that, since the adoption of the ordinance in 1986, many mobile homes, including one in which the mayor resided, had been moved into the RS zone. Two witnesses who had both previously served as mayor and as council members testified that, while they were in office, the Town had never enforced the zoning ordinance as to mobile homes. Both witnesses left their offices in 2002.

The master found the Holleys did not demonstrate the Town did not treat them differently from the way it treated other similarly situated persons, namely those desiring to place mobile homes in RS areas after July 1, 2002, when the members of the current administration took office. Furthermore, the master found the Holleys were in knowing violation of the zoning ordinance since January 15, 2003, and ordered them to remove the mobile home within ninety days. The master declined to assess any fines against the Holleys unless the mobile home was not removed in the time specified, in which case they would be fined $500.00 per day. This appeal followed.

## LAW/ANALYSIS

On appeal, the Holleys contend the master erred in failing to find the Town, in enforcing the zoning ordinance against them, denied them equal protection under the law. We disagree.

Under the Equal Protection Clause of the Fourteenth Amendment, a state may not "deny to any person

---

1. The pleadings indicate the Holleys unsuccessfully sought to have the Town rezone the property at 400 Betsy Street; however, it was unclear whether the Holleys sought judicial review of the Town's decision.

within its jurisdiction the equal protection of the laws."[2] This clause requires that "the states apply each law, within its scope, equally to persons similarly situated, and that any differences of application must be justified by the law's purpose."[3] It does not dictate that people in different circumstances cannot be treated differently under the law.[4] Rather, "the classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike."[5]

One seeking to show discriminatory enforcement in violation of the Equal Protection Clause must demonstrate arbitrary and purposeful discrimination in the administration of the law being enforced.[6] "[E]ven assuming [a governmental entity] is not enforcing [an] ordinance equally, the fact that there is some unequal treatment does not necessarily rise to the level of a constitutional equal protection violation."[7]

---

2. U.S. Const. amend. XIV, § 1.

3. *Sylvia Dev. Corp. v. Calvert County, Md.,* 48 F.3d 810, 818 (4th Cir.1995).

4. *Id.*

5. *F.S. Royster Guano Co. v. Com. of Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920).

6. *See Snowden v. Hughes,* 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1944) ("[A] discriminatory purpose is not presumed."); *State v. Solomon,* 245 S.C. 550, 574, 141 S.E.2d 818, 831 (1965) (noting evidence of unequal enforcement "was insufficient to show discriminatory enforcement in violation of the Equal Protection Clause [because] [t]here was a total absence of testimony to show an arbitrary and purposeful discrimination in the administration of the statute necessary to sustain the claim").

7. *Denene, Inc. v. City of Charleston,* 359 S.C. 85, 96, 596 S.E.2d 917, 922 (2004); *see also Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962) (holding "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation," absent allegations that "the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification"). We note the Holleys have not alleged they are members of a protected class, defined by the South Carolina Supreme Court as a class "saddled with such disabilities, or subjected to such history of purposeful unequal treatment, or relegated to such a position of political powerless-

■ In the present case, we agree with the master that the Holleys failed to establish the Town had a discriminatory purpose in enforcing the zoning ordinance against them. In their brief, the Holleys noted there had been a feud between Annette Holley and the Town since 1999, when Holley began appearing at council meetings to complain about mobile homes installed in violation of the ordinance [8]; however, the record shows the Town has enforced the ordinance against all others attempting to move mobile homes into RS areas since July 1, 2002, even those who sought to replace mobiles homes that were installed in such areas before enactment of the ordinance.

Moreover, we do not agree with the Holleys that the "class of one" concept discussed by the United States Supreme Court in *Village of Willowbrook v. Olech*[9] supports their claim of an equal protection violation. *Willowbrook* concerned a dismissal of a complaint "for failure to state a cognizable claim under the Equal Protection Clause." [10] The present case, however, involves a merits hearing at which the Town demonstrated to the satisfaction of the hearing tribunal that the efforts of the current council members to enforce the ordinance against those seeking to move mobile homes onto

---

ness as to command extraordinary protection from the majoritarian political process." *Denene, Inc.*, 359 S.C. at 94, 96, 596 S.E.2d at 921–22 (quoting *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 313, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976)).

**8.** The animosity continued after Holley–Barnes moved her mobile home onto the Betsy Street property. After the Town asked Holley to remove the mobile home from her property but before it filed suit against her, Holley placed an outhouse on her property and spray-painted references to the Town on it. In addition, according to the Holleys' attorney, Holley placed a pile of manure on a lot she owned that was located across the street from the mayor's residence as well as a junk car that was also spray-painted with notations that appeared to be references to the mayor and the Town.

**9.** 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000).

**10.** *Id.* at 563, 120 S.Ct. 1073. In her complaint, the plaintiff in *Willowbrook* alleged "the Village intentionally demanded a 33–foot easement as a condition of connecting her property to the municipal water supply" but "required only a 15–foot easement from other similarly situated property owners" and "the Village's demand was 'irrational and wholly arbitrary.'" *Id.* at 565, 120 S.Ct. 1073.

properties in RS areas after July 1, 2002, would further the stated purpose of the ordinance of "provid[ing] a homogeneous and aesthetically harmonious development of single-family dwellings on lots having an area of 10,000 square feet or more." [11] Moreover, consistent enforcement of the prohibition against mobile homes in RS areas, regardless of when such enforcement has begun, will eventually result in phasing out all mobile homes in those locations because of the relatively temporary nature of this type of dwelling.

Because the Town has enforced the ordinance against all others attempting to move mobile homes onto property in the RS areas after the new Town administration took office and because the enforcement was rationally related to a legitimate governmental objective, we affirm the master's determination that the application of the zoning ordinance against the Holleys did not violate the Equal Protection Clause.

**AFFIRMED.**

HEARN, C.J., and STILWELL, J., concur.

---

11. *See Denene*, 359 S.C. at 91, 596 S.E.2d at 920 ("If the classification does not implicate a suspect class or abridge a fundamental right, the rational basis test is used."); *City of Beaufort v. Holcombe*, 369 S.C. 643, 648, 632 S.E.2d 894, 897 (Ct.App.2006) (applying the "rational basis" test based on a determination that the class at issue in the case was not a suspect class).